UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

A.M.C. LIFTBOATS, INC.                                    CIVIL ACTION

VERSUS                                                    NO.  06-10543

APACHE CORPORATION, ET AL.                                SECTION  "N"  (1)

<u>**ORDER AND REASONS**</u>

Before the Court are cross motions for summary judgment.[1]  After reviewing the memoranda of the parties and the applicable law, this Court concludes as follows.

**I.      <u>BACKGROUND</u>**

**A.      Facts**

On or about December 2, 2004, the L/B WHITNEY, a liftboat owned by A.M.C. Liftboats, Inc. ("A.M.C."), was working for Apache Corporation ("Apache") when a leg of the vessel apparently punched through the sea floor as it was positioning itself adjacent to an Apache platform. This incident caused the vessel to capsize. Rayln P. Trahan, an employee of Expro Americas, Inc. ("Expro"), was allegedly injured when this occurred.  As a result of that incident, A.M.C. filed a limitation of liability proceeding captioned "In the Matter of A.M.C. Liftboats, Inc.," C.A. 05-1641. Trahan was one of two individuals who filed a claim in that proceeding.  Trahan also filed a claim in litigation brought against Houston Casualty Company ("HCC"), the P&I insurer of the L/B WHITNEY and of A.M.C.  Apache was not made a party to that litigation.

After settling with Trahan for $515,000, A.M.C. instituted the instant lawsuit against Apache

---

[1]        (1) Apache Corporation's Motion for Summary Judgment (Rec. Doc. 16), and (2) the Cross-Motion for Partial Summary Judgment of A.M.C. Liftboats, Inc. (Rec. Doc. 20).

and Expro.

**B.     The Contracts**

On November 1, 2002, Apache entered into a Master Time Charter with Gulf Offshore Logistics, L.L.C., ("GOL") (Exhibit A to Apache's motion).  (This Master Time Charter shall hereinafter be referred to as the "Apache/GOL contract.")  Because GOL did not own a liftboat to work for Apache, GOL entered into another Master Time Charter with A.M.C., on March 1, 2004. (Exhibit B to Apache's motion). (This Master Time Charter shall hereinafter be referred to as the "GOL/AMC contract.")  A.M.C. and Apache never contracted directly with each other.

The Apache/GOL agreement contains reciprocal indemnity obligations. In it, Apache agrees to provide indemnity as follows:

> Neither owner [GOL], its officers, directors, employees, the vessel [L/B WHITNEY], her owners [A.M.C.], operators, master, and crew, nor the underwriters [HCC] of any of the foregoing shall have any responsibility or liability for any claim involving damage to or loss of any cargo and/or equipment carried by the vessel, or for any injury, illness, disease or death of employees of charterer [Apache], its sub-contractors [Expro], or their employees or agents, and charterer [Apache] shall defend, indemnify, and hold harmless owner [GOL], its parent, subsidiary and affiliated companies and their officers, directors, employees, in-house legal counsel, agents, representatives, invitees, co-lessees, co-owners, partners, joint venturers, contractors and sub-contractors and each of their respective successors, spouses, relatives, dependents, heirs and estates, the vessel, its owners [A.M.C.], operators, master and crew, and the underwriters of each of the foregoing from and against any such claim, whether groundless or not, and whether caused in whole or in part by the negligence or fault of indemnitees, or by the unseaworthiness of the vessel or equipment of the vessel owner's property or subcontractors' property. It is expressly understood that charterer [Apache] shall insure its obligations assumed under this contract.

Exhibit A to Apache's motion, ¶ 13).  Apache also agreed to obtain "Comprehensive General Liability Insurance, including Contractual Liability Insurance, covering Charterer's obligations

under this Agreement…" (Exhibit A to Apache's motion, ¶ 11).  The contractual liability coverage required Apache to name:

> the vessel, its owners, operators, master and crew and their respective underwriters as additional insureds and shall waive subrogation against such additional insureds, but such naming and waiving shall only apply with respect to indemnities obligations and risks assumed by Charterer in this agreement.

(*Id.*)

On the other hand, in the GOL/A.M.C. contract, A.M.C. agreed to procure P&I insurance, which included the following endorsement:

> "When the vessel(s) named herein is working for or through [GOL], pursuant to either the verbal or written charter, it is hereby agreed that [GOL] ... and its related and affiliated companies, agents, employees, servants and shareholders, ... and any entity with whom [GOL] may have contracted with to supply the services of the vessel(s), whether by time charter or other form of agreement, their agents, servants, sub-contractors, employees, co-lessees, co-ventures, and related, subsidiary, and affiliated corporations, (collectively referred to as "customer(s)") are hereby named as additional assureds, enjoying full waiver of subrogation in favor of [GOL] as defined aforesaid, and customer(s).  This policy is further endorsed to delete the "misdirected arrows" clause, "other than owner" clause, and all other terms restricting coverage to claims brought against [GOL] as defined aforesaid, or its customer(s) in a capacity other than owner of the vessel(s).  It is understood that this policy shall be primary to any other insurance available to [GOL] as defined aforesaid, and customer(s).  Underwriters agree to provide [GOL] with thirty (30) days written notice of cancellation, modification or restriction; provided, however, that the coverage available to customer(s) hereunder shall be no greater than the coverage required to be provided by [GOL] under the terms of its agreement with customer(s)."

(page 5 of Exhibit B to Apache's motion).  According to Exhibit C to Apache's motion, A.M.C. obtained the coverage required by the GOL/A.M.C. contract.

## C.    The Claims

A.M.C. claims that it is entitled to contractual defense and indemnification from Apache and

Expro.  A.M.C. also claims that it is entitled to tort contribution and/or indemnity from Apache.

Apache has filed a motion for summary judgment, seeking dismissal of A.M.C.'s claims against it with prejudice and at A.M.C.'s costs.  A.M.C., on the other hand, has filed a cross-motion for partial summary judgment, requesting the granting of its claims for contractual defense and indemnification from Apache.

## II.    THE ARGUMENTS OF THE PARTIES

In its motion for summary judgment, Apache claims that A.M.C.'s P&I deductible was $10,000.  Apache infers that HCC likely paid all but this $10,000 of the settlement, although the lawsuit was filed only in the name of A.M.C., and not HCC.  Based on the GOL/A.M.C. contract and the A.M.C. insurance policies, HCC waived its subrogation rights against Apache. Thus, because HCC waived its subrogation rights, Apache claims that neither A.M.C. nor HCC have a claim to the extent any payment was made by HCC.  Apache argues that this precludes any cause of action against Apache for the payments made by HCC in this case.

If the Court determines that A.M.C.'s subrogation rights have not been waived, Apache argues, in the alternative, that it is entitled to defense and indemnity under the A.M.C. insurance policy for the claims asserted against it by A.M.C.  Apache asserts that because the "other than owner" and "as owner" language has been deleted from the P&I policy, coverage was extended to Apache for the claims brought by A.M.C.  Further, Apache argues that A.M.C.'s insurance is primary to any other policy that may have afforded coverage to Apache.

As for paragraph 14 of the Apache/GOL contract, which could be read to require Apache to defend and indemnify A.M.C., Apache claims that, according to Fifth Circuit case law,  the insurance obtained by A.M.C. trumps the indemnity arguably owed by Apache.  Apache cites *Ogea*

*v. Loffland Bros. Co.*, 622 F.2d 186 (5th Cir. 1980), to support this assertion.  In *Ogea*, the issue before the Fifth Circuit was the interpretation of a drilling contract entered into between the owner of a drilling platform and the operator the drilling platform.  The drilling contract included an indemnity clause providing that the owner of the platform would indemnify the operator under certain circumstances with the operator indemnifying the owner in other circumstances.  The drilling contract also required the operator to acquire liability insurance and to name the owner as an additional insured under the policy.  The *Ogea* court rejected the argument that the contract should be governed exclusively by the indemnity provisions.  Instead, the Fifth Circuit held that inclusion of the mandatory insurance provisions meant that the parties would first look to insurance to cover claims and damages. In other words, only after insurance coverage was exhausted would the indemnity provisions be enforced. Essentially, the *Ogea* court determined that where indemnity obligations in a contract are supported by insurance agreements which require the parties to name each other as additional insureds in their respective policies, the parties, prior to asserting a claim for indemnity, are to first look to their own insurance coverage.

A.M.C., on the other hand, claims that the indemnity it seeks does not conflict with *Ogea*. A.M.C. argues that the indemnity language here is different from the Ogea indemnity language because here,  A.M.C.'s underwriters are included as an indemnitee. Here, Apache agrees to indemnify A.M.C., the WHITNEY, and its underwriters. (Exhibit A to Apache's motion, ¶ 13). A.M.C. contends that if it and its underwriters, as indemnitees, are required to exhaust A.M.C.'s insurance prior to seeking indemnification from Apache (as required by *Ogea*), then the agreement to indemnify the underwriters is hollow and meaningless. In other words, A.M.C.'s underwriters could not receive the benefit of Apache's indemnity obligation if the insurance limits must be

exhausted before Apache's indemnity obligation is triggered. A.M.C. claims that such an interpretation would violate *Ogea* and the resulting requirement of a harmonious reading of the indemnity and insurance provisions. A.M.C. also argues that such an interpretation would relieve Apache of any indemnity obligation whatsoever towards A.M.C.'s underwriters and make the inclusion of the underwriters superfluous, which is an impermissible contract interpretation.

A.M.C. makes a second distinction between the instant case and *Ogea*.  In *Ogea*, there was no language in the indemnity obligation requiring the indemnitor to obtain insurance in support of its indemnity obligations.  Here,  the indemnity provision specifically requires such insurance to be acquired.  (Exhibit A to Apache's motion, ¶ 13).

In support of its position, Apache also cites *Tullier v. Halliburton Geophysical Services, Inc.*, 81 F.3d 552, 553-54 (5th Cir.1996), wherein the Fifth Circuit quoted *Ogea* and determined that the "insurance procurement and indemnity provisions of a drilling contract 'must be read in conjunction with each other in order to properly interpret the meaning of the contract."'  The *Tullier* court reasoned that the controlling fact in *Ogea* was the existence of "additional assured" coverage whereby an indemnitee agreed to procure insurance coverage for the benefit of the indemnitor.

A.M.C. notes that in *Tullier*, the "primary" insurance requirement in the contract bolstered the finding that the insurance must be exhausted prior to looking to the indemnity provision.  A.M.C. reasons that there is no requirement in the Apache/GOL contract that one party's insurance be primary over the insurance of the other. A.M.C. concedes that the requirement that the insurance coverage provided to an additional insured/indemnitor be primary over its own coverage would support an interpretation that the indemnitee must look to its own insurance before the indemnity obligation. However, A.M.C. asserts that the absence of such a requirement,

6

specifically where the indemnitor has obtained insurance in support of its indemnity obligations, supports A.M.C.'s position that the indemnity provision takes precedent over the insurance provision.

Here, Apache claims that if the Court were to conclude that A.M.C. is entitled to indemnity based on the Apache/GOL contract, that indemnity would only be enforceable once the policy limits of the A.M.C. policy are exhausted, as that policy favors Apache as an additional insured. Apache asserts that A.M.C. has no valid claim against Apache for indemnity because A.M.C.'s claim is below the policy limits afforded to Apache under the A.M.C. insurance policy.

In further opposition, A.M.C. contends that the indemnity language in the Apache/GOL contract requires Apache to defend, indemnify and hold A.M.C., the WHITNEY, and their underwriters, harmless from claims brought by employees of Apache or its contractors (Expro). A.M.C. argues that Apache clearly obligated itself to indemnify the WHITNEY and A.M.C. (and A.M.C.'s underwriter) from personal injury claims asserted by employees of Apache and its subcontractors (Rayln Trahan). A.M.C. argues that the parties clearly intended a "knock for knock" indemnity and required Apache to obtain insurance in support of its indemnity obligations.

## III.   LAW AND ANALYSIS

### A.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The materiality of facts is determined by the

substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

Initially, the movant bears the burden of demonstrating the absence of material fact issues. *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir.1993). The movant is not required, however, to negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) ( *citing Celotex*, 477 U.S. at 323). If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 325. If the movant meets his burden, then the burden then shifts to the nonmovant, who, to avoid summary judgment, must go beyond the pleadings and designate specific facts that show that there is a genuine issue for trial. *Little*, 37 F.3d at 1075 ( *citing Celotex*, 477 U.S. at 325). Of course, unsubstantiated assertions do not constitute competent summary judgment evidence. *Abbott*, 2 F.3d at 619 ( *citing Celotex*, 477 U.S. at 324).

Before granting a motion for summary judgment, the district court must be satisfied that no reasonable trier of fact could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 249; *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (stating that "the facts and inferences [must] point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict"). In determining whether a material issue of fact exists, the evidence and all inferences drawn therefrom must be considered in the light most favorable to the non-moving party. *Baker v. American Airlines, Inc.*, 430 F.3d 750, 753 (5th

Cir.2005) ( *quoting Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir.2005)).

**B.     Analysis**

As explained above, the Fifth Circuit mandates harmonious reading of the indemnity and insurance procurement provisions. *Tullier*, 81 F.3d at 554.  Here, there were two operative contracts: the Apache/GOL contract and the GOL/A.M.C. contract.  While neither *Ogea* or *Tullier* involved the interpretation of two contracts, the Court finds these cases instructive nonetheless.  The Court cannot focus on one contract while ignoring the other.  The terms of those two contracts must be read harmoniously with the insurance procurement provisions included therein.

The GOL/A.M.C. policy afforded Apache a "full waiver of subrogation." (page 5 of Exhibit B to Apache's motion).  As argued by Apache and not contradicted by A.M.C., the P&I policy procured by A.M.C. waived subrogation rights against additional insureds (like Apache). (Exhibit C to Apache's motion).  Similarly, in *Marathon Oil Co. v. Mid-Continent Underwriters*, 786 F.2d 1301 (5th Cir. 1986), Marathon chartered a vessel from B & C Boat Rentals under an agreement that required B & C to provide protection and indemnity insurance naming Marathon as an additional assured and waiving subrogation rights against it. As in the instant case, the policy in *Marathon* included a waiver of subrogation.  The policy also named Marathon as an additional assured, but only while the vessel was chartered to Marathon and only for claims arising out of the operation of the vessel. A seaman working aboard the vessel was injured as a result of the negligence of Marathon employee who was working aboard a fixed platform.   Although the insurance policy covered Marathon for liability incurred as an operator, owner, or charterer, it did not insure Marathon for liability arising in its capacity as platform owner. The Fifth Circuit held:

> When underwriters issue a policy covering an additional assured and waiving
> "all subrogation" rights against it, they cannot recoup from the additional

> assured any portion of the sums they have paid to settle a risk covered by the
> policy, even on the theory that the recoupment is based on the additional
> assured's exposure for risks not covered by the policy.

786 F.2d 1302.  The Court reasoned as follows:

> No waiver of subrogation was required, however, with respect to covered
> liability, for the provision of insurance necessarily implies that the insurer
> will not seek to recoup amounts paid by it to satisfy insured claims. Were this
> not so, the insurance would be illusory. The addition of a
> waiver-of-subrogation clause reinforces the provision implied by law, but the
> clause is not merely redundant, particularly when, as here, "all subrogation"
> is waived. Because they had waived "all subrogation," [the underwriters]
> could not have sued in their own name to recover from Marathon [the
> additional insured] any part of the $60,000 they paid [the injured individual].

*Id.* at 1304.

In the instant case, Apache notes that the settlement proceeds A.M.C. seeks to recover far exceed the deductible actually paid by A.M.C.  Thus, Apache claims the real party in interest is HCC, A.M.C.'s P&I insurer, which has not yet been added as a party plaintiff, although A.M.C. is allegedly in the process of doing so.  (See Rec. Doc. 20, n. 2). Because the P&I policy procured by A.M.C. waived subrogation rights against additional insureds (like Apache), the Court finds that this waiver of subrogation in favor of Apache prevents claims against Apache such as the ones brought against it in this case.

Further, even if this Court determined that A.M.C.'s subrogation rights were not waived, the Court finds that reading the contracts together with the procured insurance provisions reveals that Apache is entitled to defense and indemnity for the claims asserted against it by A.M.C. in this case.  Most importantly, the GOL/A.M.C. contract specifically states that insurance procured by A.M.C. shall be "primary to any other insurance available to [GOL] . . . and customer(s)."  (pages 5-6 of Exhibit B to Apache's motion).  There is not

10

a similar provision in the Apache/GOL contract.

The Court finds that Apache's alleged indemnity obligations (from the Apache/GOL contract) only come into play if and when A.M.C.'s P&I policy limits are exhausted. Because the settlement and defense costs were apparently within the policy limits of the HCC policy, Apache owes no indemnity obligation to A.M.C.  Thus, A.M.C.'s claims against Apache fail as a matter of law.

**IV.**    **Conclusion**

Accordingly,

**IT IS ORDERED** that Apache's Motion for Summary Judgment (Rec. Doc. 16) should be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that A.M.C.'s Cross-Motion for Partial Summary Judgment (Rec. Doc. 20) should be and hereby is **DENIED**.

New Orleans, Louisiana, this 25th day of January, 2008.

**KURT D. ENGELHARDT**
**United States District Judge**

11