UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| A.M.C. LIFTBOATS, INC. | CIVIL ACTION |
| VERSUS | NO. 06-10543 |
| APACHE CORPORATION, ET AL. | SECTION "N" (1) |

**ORDER AND REASONS**

Before the Court is the Motion for Summary Judgment (Rec. Doc. 34), filed by Expro Americas, Inc. ("Expro"). After reviewing the memoranda of the parties and the applicable law, this Court concludes as follows.

**I.     BACKGROUND**

    **A.     Facts**

On or about December 2, 2004, the L/B WHITNEY, a liftboat owned by A.M.C. Liftboats, Inc. ("A.M.C."), was working for Apache Corporation ("Apache") when a leg of the vessel apparently punched through the sea floor as it was positioning itself adjacent to an Apache platform. This incident caused the vessel to capsize. Rayln P. Trahan ("Trahan"), an employee of Expro, was allegedly injured when this occurred. As a result of that incident, A.M.C. filed a limitation of liability proceeding captioned "In the Matter of A.M.C. Liftboats, Inc.," C.A. 05-1641. Trahan was one of two individuals who filed a claim in that proceeding. Expro was not made a party to that litigation.

1

After settling with Trahan for $515,000, A.M.C. instituted the instant lawsuit against Apache and Expro.

**B.     The Contracts**

On September 19, 1995, Apache and Production Wireline Services, Inc. ("PWSI"), which was later purchased by Expro, entered into a Master Service Agreement for wireline services. (Exhibit A to Rec. Doc. 34). (This Master Service Agreement shall hereinafter be referred to as the "Apache/Expro contract.") On November 1, 2002, Apache entered into a Master Time Charter with Gulf Offshore Logistics, L.L.C., ("GOL"). (Exhibit B to Rec. Doc. 34).  (This Master Time Charter shall hereinafter be referred to as the "Apache/GOL contract.")  Because GOL did not own a liftboat to work for Apache, GOL entered into another Master Time Charter with A.M.C., on March 1, 2004. (Exhibit C to Rec. Doc. 34). (This Master Time Charter shall hereinafter be referred to as the "GOL/AMC contract.")  A.M.C. never contracted directly with either Apache or Expro.

In the Apache/Expro contract, Expro agreed to indemnify Apache and its contractors and subcontractors (including A.M.C.) As follows:

> 11.     INDEMNITIES.
> (a)  CONTRACTOR AGREES TO BE SOLELY RESPONSIBLE FOR AND ASSUME LIABILITY FOR AND HEREBY AGREES TO DEFEND, RELEASE, INDEMNIFY, AND HOLD HARMLESS COMPANY GROUP, FROM ALL LOSSES, COSTS, EXPENSES, AND CAUSES OF ACTION (INCLUDING ATTORNEYS' FEES AND COURT COSTS) FOR LOSS OR FOR DAMAGE TO PROPERTY, AND FOR INJURIES TO PERSONS AND DEATH ARISING OUT OF, INCIDENT TO, OR IN CONNECTION WITH, THE WORK OR ANY AND ALL OPERATIONS UNDER THE CONTRACT, WHETHER OR NOT SUCH LOSSES, COSTS, EXPENSES, INJURIES, DEATH, OR CAUSES OF ACTION ARE CAUSED OR CONTRIBUTED TO BY THE NEGLIGENCE, OMISSION, STRICT LIABILITY, OR CONTRACTUAL LIABILITY, OR FAULT OF ANY MEMBER OF COMPANY GROUP AND WHETHER OR NOT CAUSED BY A PRE-EXISTING CONDITION.  THE LIABILITY ASSUMED BY CONTRACTOR PURSUANT TO THIS SECTION 11(A) SHALL NOT BE

>   > LIMITED TO THE AMOUNTS OF CURRENT PROPERTY OR LIABILITY INSURANCE VOLUNTARILY CARRIED BY CONTRACTOR.

(Exhibit A to Rec. Doc. 34). Expro does not deny that the above clause would obligate it to indemnify Apache and Apache's other contractors and subcontractors (A.M.C.) for personal injury claims brought by its employees. Instead, Expro has filed a motion for summary judgment claiming that the Louisiana Oilfield Indemnity Act ("LOIA"), La. R.S. 9:2780, bars the indemnity sought by A.M.C. and, alternatively, that 33 U.S.C. § 905(c) prohibits the indemnity sought by A.M.C.

## II.   LAW AND ANALYSIS

### A.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56©. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

Initially, the movant bears the burden of demonstrating the absence of material fact issues. *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir.1993). The movant is not required, however, to negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) ( *citing Celotex*, 477 U.S. at 323). If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment

burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 325. If the movant meets his burden, then the burden then shifts to the nonmovant, who, to avoid summary judgment, must go beyond the pleadings and designate specific facts that show that there is a genuine issue for trial. *Little*, 37 F.3d at 1075 ( *citing Celotex*, 477 U.S. at 325). Of course, unsubstantiated assertions do not constitute competent summary judgment evidence. *Abbott*, 2 F.3d at 619 ( *citing Celotex*, 477 U.S. at 324).

Before granting a motion for summary judgment, the district court must be satisfied that no reasonable trier of fact could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 249; *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (stating that "the facts and inferences [must] point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict"). In determining whether a material issue of fact exists, the evidence and all inferences drawn therefrom must be considered in the light most favorable to the non-moving party. *Baker v. American Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir.2005) ( *quoting Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir.2005)).

**B.    Analysis**

**1.    The Nature of the Contract**

The parties disagree on whether the Court should apply Louisiana or general maritime law to interpret the Apache/Expro contract. Expro asserts that Louisiana law applies (particularly, the LOIA) because the Apache/Expro contract is not a maritime contract. Instead, Expro claims that the Apache/Expro contract is a contract relating to a well for oil, gas, water, or drilling for minerals. Specifically, because the Apache/Expro contract pertains to operations on the Outer Continental

Shelf, Expro argues that, pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, et seq., the indemnity provisions should be construed according to the law of the adjacent state (in this case, Louisiana). Expro contends that contracts for wireline services, like the Apache/Expro contract here, have typically been considered non-maritime in nature.

In opposition, A.M.C. argues that the Apache/Expro contract is a maritime contract as the work performed pursuant to that contract was done in, on, or above navigable waters. A.M.C. disputes the assertion that Louisiana law applies. Instead, it argues that under maritime law, the indemnity provision in the contract requires Expro to indemnify it for the claims brought against it by Expro's employee Trahan. To determine which law applies, the Court must first determine the nature of the Apache/Expro contract.

To determine whether OCSLA applies to a contract and whether the contract is maritime or non-maritime, the Fifth Circuit focuses on three significant factors: (1) whether the controversy arises on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto); (2) whether federal maritime law applies of its own force, and (3) whether the state law is inconsistent with federal law. *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir.1990). This test, known as the PLT test, is firmly supported in Fifth Circuit jurisprudence as the proper test for deciding whether state law provides the rule of decision in an OCSLA case. *Hodgen v. Forest Oil Corp.*, 87 F.3d 1512, 1526 (5th Cir.1996).

    **a.**  **Situs**

Expro notes that it is undisputed that the accident occurred when Trahan was aboard the L/B WHITNEY while it was jacked up with its legs attached to the seabed in navigable waters above the Outer Continental Shelf. The Fifth Circuit has held that OCSLA applies to the following locations:

5

>  (1) the subsoil and seabed of the OCS;
>
>  (2) any artificial island, installation, or other device if
>
>>  (a) it is permanently or temporarily attached to the seabed of the OCS, and
>>
>>  (b) it has been erected on the seabed of the OCS, and
>>
>>  (c) its presence on the OCS is to explore for, develop, or produce resources from the OCS;
>
>  (3) any artificial island, installation, or other device if
>
>>  (a) it is permanently or temporarily attached to the seabed of the OCS, and
>>
>>  (b) it is not a ship or vessel, and
>>
>>  (c) its presence on the OCS is to transport resources from the OCS.

*Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 497 (5th Cir. 2002). Here, the situs test is met because the L/B WHITNEY was temporarily jacked up and attached to the seabed of Outer Continental Shelf when Trahan was injured.

### b.   Does Federal Maritime Law Apply of its Own Force

The Fifth Circuit has held that "deciding whether a contract is maritime and whether maritime law applies of its own force" are identical inquiries for purposes of determining OCSLA applicability in the context of oilfield indemnity disputes, and "both belong as a single factor in the three part PLT test." *Hodgen*, 87 F.3d at 1524-25. To determine whether a contract is maritime, the Court applies the six-factor test set forth in *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 316 (5th Cir.1990): (1) what does the specific work order in effect at the time of the injury provide; (2) what work did the crew assigned under the work order actually do; (3) Was the crew assigned to do work aboard a vessel in navigable waters; (4) To what extent did the work being done relate to the mission of the

vessel; (5) What was the principal work of the injured worker; and (6) What work was the injured worker actually doing at the time of his injury. *Id.* at 316.

Applying the *Davis* factors to the case at bar, the Court concludes that the principal obligation of the Apache/Expro contract was non-maritime. The first and second *Davis* factors examine what the specific work order in effect at the time of the injury provides and what work the crew assigned under the work order actually performed. The Apache/Expro contract provided for wireline services. (Exhibit A to Rec. Doc. 34). Expro's Account Manager, Troy Fruge, explained that there were no work orders for the job with Apache; instead, Expro's work was performed under ordinary call-out procedures. (Exhibit B to Rec. Doc. 36, ¶ 8). Expro provided Apache with a wireline crew to perform wireline services. The work of Expro's crew was done while the L/B WHITNEY was jacked up beside Apache's platform. (Exhibit 1 to Exhibit B; Rec. Doc. 36; see also Exhibit B to Rec. Doc. 36, ¶ 7). Expro did not use the L/B WHITNEY's equipment to perform its services on the well. (Exhibit B to Rec. Doc. 36, ¶ 9). Because there was no work order in this case, the Apache/Expro contract must control. That contract provided for wireline services. Contracts for wireline services are typically held to be non-maritime in nature. See *Thurmond v. Delta Well Surveyors*, 836 F.2d 952, 955 (5th Cir. 1988). To the extent that the crew lived aboard the vessel and used it as a work platform, that could arguably be considered maritime; however, the Court finds that under these circumstances, that is, at most, merely incidental to the primary and sole job of performing wireline services for Apache. In light of these facts, the Court finds that the first and second *Davis* factors weigh in favor of Expro.

The third *Davis* factor, which examines whether the crew was assigned to do work aboard a vessel in navigable waters, weighs slightly against Expro. While the Apache/Expro contract did not

7

assign the Expro crew to a vessel (namely the L/B WHITNEY), the Expro crew performed its wireline services while aboard the L/B WHITNEY.

The fourth *Davis* factor, the extent to which the work being done related to the mission of the vessel, ultimately weighs in favor of Expro.  Although the L/B WHITNEY was used to provide a work platform for Expro's crew, that use was only incidental to the performance of the Apache/Expro contract, which was to provide wireline services to Apache.  See *Thurmond*, 836 F.2d at 956.

The fifth *Davis* factor, which relates to the principal work of the injured worker, also weighs in favor of Expro. In this case, the evidence examined above demonstrates that the principal work of the Expro crew in general, and Trahan in particular, involved wireline services work.  This, in no way, can arguably be considered "vessel operations" work.

The sixth *Davis* factor examines the activities of the injured worker at the time of his injury.  If, as A.M.C. claims, Trahan was completing paperwork (making out wireline work tickets) in the galley of the L/B WHITNEY at the time of the accident, that work was furthering his mission of providing wireline service to Apache.  As such, the Court finds that Trahan was not engaged in any conduct that would weigh in favor of applying maritime law to the contract at issue in this case.

Thus, weighing all the factors, the Court finds that the Apache/Expro contract is non-maritime.  This coincides with the Fifth Circuit's analysis in *Thurmond*, wherein it explained:

> The principal obligation under this contract was to perform wireline services, clearly a nonmaritime obligation in the sense that it does not concern the operation of the vessel. Such services are peculiar to the oil and gas industry, not maritime commerce. Wireline services are performed on land-based wells and offshore wells, and wireline services present hazards and problems peculiar to the oil and gas industry. "Maritime law in the strict sense has never had to deal with the resources in the ground beneath the sea, and its whole tenor is ill adapted for that purpose." On the other hand, state law is well suited to cope with oil production problems.

Thurmond, 836 F.2d 952 (5th Cir. 1988).

### c.     Consistency of State and Federal Law

The third factor of the PLT test is whether the provisions of state law are inconsistent with any provision of federal law. Pursuant to OCSLA, the law of the adjacent state, Louisiana, supplies the rule of decision. The Fifth Circuit has specifically held that "nothing in the LOIA is inconsistent with federal law." *Hodgen*, 87 F.3d at 1529.

Thus, the Court finds that Louisiana law applies in this case pursuant to OCSLA. Because the Court has determined that Louisiana law applies, the choice of law clause in the Apache/Expro contract, stating that the contract would be governed by general maritime law, thereby circumventing the LOIA, is void as against the public policy of Louisiana. *Matte v. Zappata Offshore Co.*, 784 F.2d 628, 631-632 (5th Cir.1986).

### 2.     How LOIA affects the indemnity provision in the Apache/Expro contract

The LOIA provides, in pertinent part:

> Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

La. Rev. Stat. § 9:2780 (B). Because LOIA applies in this situation, Expro will be required to provide a defense, indemnify or provide additional insured status to A.M.C. only if the *Meloy* exception applies.[1] A.M.C. alleges that under the doctrine of *Meloy v. Conoco, Inc.*, 504 So.2d 833

---

[1] Expro asserts that the exception established in *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5th Cir.1994) ("the Marcel exception"), does not apply in this situation. A.M.C. did not dispute that assertion.

9

(La.1987), it was entitled to recover costs of defense, including attorney's fees, from Expro because it was free from fault.  Expro notes that Fifth Circuit has determined that use of the *Meloy* exception is prohibited where liability cannot be determined because, as here, the indemnitee has settled the plaintiff's claims against it.  See *Tanksley v. Gulf Oil Corp.*, 848 F.2d 515 (5th Cir. 1988).  A.M.C., on the other hand, claims that the *Tanksley* decision should not be followed and cites state court cases that have either questioned or rejected that decision.  See *Fontenot v. Chevron U.S.A., Inc.*, 676 So.2d 557,563 n.7( La. 1996); *Ridings v. Danos & Curole Marine Contractors, Inc*., 723 So.2d 979 (La. App. 4th Cir. 1998); *Phillips Petroleum Company v. Liberty Servs*., 657 So.2d 405, 409 (La.App. 3 Cir.1995) .

     The Fifth Circuit briefly addressed this issue in *American Home Assur. Co. V. Chevron, USA, Inc.*, 400 F.3d 265, n. 15 (5th Cir. 2005).  The *American Home* Court noted that the Louisiana Supreme Court has not ruled on the matter of whether the *Tanksley* decision should be adopted on rejected.  In addressing the two appellate court decisions that have rejected the *Tanksley* decision, the Fifth Circuit cited to *FDIC v. Abraham*, wherein it explained, "[W]e should not disregard our own prior precedent on the basis of subsequent intermediate state appellate court precedent unless such precedent comprises unanimous or near-unanimous holdings from several-preferably a majority-of the intermediate appellate courts of the state in question."  400 F.3d 265, n. 15 (quoting 137 F.3d 264, 269 (5th Cir.1998)).  Here, this Court is unwilling to reject *Tanksley*.  Accordingly, under the *Tanksley* decision, A.M.C. is barred from qualifying under the *Meloy* exception to LOIA because, by settling Trahan's claim, it eliminated the possibility of being exonerated from liability for his injuries.  Thus, the indemnity and additional assured provision to A.M.C.'s claims are void under LOIA.

      **3.     Remaining Claims**

Because the Court has determined that the Apache/Expro contract is non-maritime, there is no need to analyze whether Trahan is a longshoreman under the Longshore and Harbor Workers' Compensation Act ("LHWCA").

**III.     Conclusion**

Accordingly,

**IT IS ORDERED** that Expro's Motion for Summary Judgment (Rec. Doc. 34) should be and hereby is **GRANTED**. A.M.C's claims against Expro for defense and indemnity are discissed with prejudice at A.M.C.'s costs.

**IT IS FURTHER ORDERED** that the **Motion to Strike (Rec. Doc. 49)** is **DENIED as moot** because the Court did not consider the Declaration of Dean Guidry.

New Orleans, Louisiana, this 5th day of March, 2008.

                                      **KURT D. ENGELHARDT**
                                      **United States District Judge**