UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| A.M.C. LIFTBOATS, INC. | CIVIL ACTION |
| VERSUS | NO. 06-10543 |
| APACHE CORPORATION, ET AL. | SECTION "N" (1) |

### ORDER AND REASONS

Before the Court is the Motion for New Trial (Rec. Doc. No. 56), filed by A.M.C. Liftboats, Inc. ("A.M.C."). The Court construes this motion as one seeking reconsideration of the Court's March 5, 2008 ruling, which granted the Motion for Summary Judgment (Rec. Doc. No. 34), filed by Expro Americas, Inc. ("Expro"). For the reasons stated herein, reconsideration is granted to the extent that the Court will consider the Declaration of Dean Guidry ("Guidry") for the purposes of deciding Expro's motion for summary judgment. However, even when considering Guidry's Declaration, the Court's decision remains unchanged.

**I.    LAW**

District courts have substantial discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e). See *Gossett v. Wal-Mart Stores, Inc.*, No. 05-CV-1459, 2007 WL 628116, at *2 (E.D.La. Feb. 26, 2007), (citing *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 276 (5th Cir.2000); *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir.1993); *Turner v. Pleasant*, No. 01-CV-3572, 2004 WL 612960, at *1 (E.D.La. Mar. 25,

2004); aff'd, 127 F. App'x 140 (5th Cir.2005). The reconsideration of a prior order is "an extraordinary remedy" which should be used sparingly and should not be used to present new evidence or arguments that could have been offered or raised prior to the entry of judgment. *Templet v. HydroChem, Inc.,* 367 F.3d 473, 479 (5th Cir.2004). A moving party must satisfy at least one of the following criteria to prevail on a Rule 59(e) motion: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in the controlling law. *Flynn v. Terrebonne Parish School Board*, 348 F.Supp.2d 769, 771 (E.D.La.2004). The standards which apply to Rule 59(e) favor denial of a motion to alter or amend a judgment. *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir.1993).

## II. ANALYSIS

### A. Even When Considering the Guidry's Declaration, the Court Stands by its March 5, 2008 Ruling

The statements made in Guidry's Declaration pertain to whether the contract at issue here was maritime or non-maritime. Guidry states:

> 6. At all relevant times during the work in November and December 2004 [Expro] kept its wireline unit and other equipment aboard the L/B WHITNEY.
>
> 7. The wireline unit remained at all times aboard the L/B WHITNEY, even when wireline operations were performed.
>
> 8. The wireline operator employed by Expro operated the wireline unit from aboard the L/B WHITNEY.

(Exhibit D to Rec. Doc. 44). In its March 5, 2008 opinion, this Court recognized several times that the L/B WHITNEY was used as a work platform. The Court explained, "[t]o the extent that the

crew lived aboard the vessel and used it as a work platform, that could arguably be considered maritime; however, the Court finds that under these circumstances, that is, at most, merely incidental to the primary and sole job of performing wireline services for Apache." (Rec. Doc. 54, p. 7). The Court also acknowledged, "[w]hile the Apache/Expro contract did not assign the Expro crew to a vessel (namely the L/B WHITNEY), the Expro crew performed its wireline services while aboard the L/B WHITNEY." (Rec. Doc. 54, p. 8). Last, the Court reasoned that "[a]lthough the L/B WHITNEY was used to provide a work platform for Expro's crew, that use was only incidental to the performance of the Apache/Expro contract, which was to provide wireline service to Apache." (*Id.*) Thus, even when considering these statements made by Guidry, the Court concludes that its original decision was not in error. Indeed, the Court notes that it specifically considered those factors in its original decision.

Guidry also alleges the following: "[t]he L/B WHITNEY's crane was used to position the wireline equipment over the well where it could be attached to the well by Expro employees." This statement also goes to the fact already acknowledged by the Court that the wireline work was performed from the deck of the L/B WHITNEY. This statement does conflict with the following statement made by the Court in its March 5, 2008 decision: "Expro did not use the L/B's WHITNEY's equipment to perform its services on the well." (Rec. Doc. 54, p. 7). The Court withdraws this statement; however, it still finds that even though the L/B WHITNEY's crane was used to perform wireline work, that use was merely incidental to the performance of the Apache/Expro contract, which was to provide wireline services (typically non-maritime in nature) to Apache. The Fifth Circuit has noted that a contract "does not become maritime simply because the wireline services were performed aboard the drilling vessel." *Domingue v. Ocean Drilling and*

3

*Exploration Company*, 923 F.2d 393 (5th Cir. 1991).  Expro was hired exclusively to perform wireline services.  As the Fifth Circuit noted in *Thurmond v. Delta Well Surveyors*, 836 F.2d 952, 955 (5th Cir. 1998):

> The principal obligation under this contract was to perform wireline services, clearly a nonmaritime obligation in the sense that it does not concern the operation of the vessel. Such services are peculiar to the oil and gas industry, not maritime commerce. Wireline services are performed on land-based wells and offshore wells, and wireline services present hazards and problems peculiar to the oil and gas industry.

In summary, applying the *Davis* factors, this Court reasoned that the principal obligation of this contract was non-maritime.  The Apache/Expro contract provided for wireline services; such contracts are typically held to be non-maritime in nature.  Expro provided Apache with a wireline crew to perform wireline services.  The work of Expro's crew was done while the L/B WHITNEY was jacked up beside Apache's platform.  The Apache/Expro contract did not specifically assign the Expro crew to the L/B WHITNEY.  Moreover, the principal work of the Expro crew in general, and Trahan in particular, involved wireline services work, which, in no way, can be considered "vessel operations" work. Last, A.M.C. claims that Trahan was completing paperwork (making out wireline work tickets) in the galley of the L/B WHITNEY at the time of the accident.  That work was clearly furthering his mission of providing wireline service to Apache, and was, in no way, maritime in nature.  To the extent that the crew lived aboard the vessel, used the vessel's crane for wireline operations, and used the vessel as a work platform, that could admittedly be considered maritime; however, the Court finds that under the circumstances specific to this case, those occurrences are, at most, merely incidental to the primary and sole job of performing wireline services for Apache.  Thus, after weighing and analyzing all the factors, the Court finds that the Apache/Expro contract is non-maritime.

    B.    The Declaration of Dane Matherne Does Not Constitute Newly Discovered or Previously Unavailable Evidence

This Court will not consider the affidavit of Captain Dane Matherne, attached to the Motion for New Trial as Exhibit A. A.M.C. could have presented this affidavit to the Court with its opposition to Expro's motion for summary judgment. For whatever reason, A.M.C. did not put this affidavit before the Court until its motion for new trial. As stated herein, a motion for new trial cannot be used to present new evidence or arguments that could have been offered or raised prior to the entry of judgment. *Templet,* 367 F.3d at 479. However, even if the Court were to consider the Matherne affidavit, it states the same as Guidry's affidavit. For the reasons previously explained, the Court stands by its original decision to grant summary judgment in favor of Expro.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that **Motion for New Trial (Rec. Doc. No. 56)** is **GRANTED** to the extent that the Court has now considered the Declaration of Dean Guidry for the purposes of deciding Expro's motion for summary judgment. However, even when considering Guidry's affidavit, the Court's decision to grant summary judgment in favor of Expro remains the same.

New Orleans, Louisiana, this 2nd day of May, 2008.

                                        **KURT D. ENGELHARDT**
                                        **United States District Judge**